CULPEPPER, Judge.
Plaintiff seeks workmen’s compensation benefits for total and permanent disability. *923 From an adverse judgment, the defendant employer and its insurer appealed. Plaintiff answered the appeal, seeking an increase in the award for attorney’s fees.
The issues are: (1) Was plaintiff disabled beyond the date on which compensation payments were terminated? (2) Is plaintiff’s present disability, if any, causally related to the accident? (3) Is plaintiff entitled to penalties and attorney’s fees and, if so, is the award of $1500 for attorney’s fees inadequate?
The facts show that the plaintiff is 62 years of age and has worked as a pipe-fitter for approximately 30 years. This is hard manual labor which requires a lot of climbing and heavy lifting. He suffered seven inguinal hernias, five on the left side and two on the right, previous to the one at issue in the present case. All of these previous hernias, including the seventh in 1965, were surgically repaired and plaintiff continued to work.
On December 1, 1967, plaintiff was working as a pipefitter on a construction job for the defendant, Lummus Company. He was carrying a heavy tool box and stepped from a handrail. He felt pain in his groin. The defendant concedes that plaintiff suffered a compensable accident.
Plaintiff was seen initially by Dr. R. Gordon Holcomb, Jr., a general surgeon of Lake Charles. This physician diagnosed a new left inguinal hernia, which he surgically repaired on January 16, 1968. Due to the weakness of the abdominal wall, caused by previous hernias and their surgical repair, Dr. Holcomb inserted a marlex prosthesis, about the size of a postage stamp, to strengthen and tighten the inguinal canal.
The operation was successful as far as the hernia is concerned. There has been no reoccurrence. However, within a few days after surgery plaintiff’s left testicle became swollen and inflamed. Dr. Holcomb explained that this was a known surgical risk. The tightening of the inguinal canal, although necessary, caused compression of the testicle cord which inhibited the blood supply and resulted in inflammation and massive swelling of the left testicle, The condition was treated with antibiotics but eventually the testicle atrophied.
Dr. Holcomb testified at the trial that on January 30, 1968, he discharged plaintiff as having reached maximum recovery. However, he was of the opinion at the time that plaintiff could not return to a job requiring climbing or heavy lifting for two reasons: (1) The last hernia operation, together with all of the previous ones left his left side very susceptible to more herniation. (2) The atrophied left testicle and the continued pressure on the testicle cord causes plaintiff substantial pain if he attempts heavy physical labor. This diagnosis did not become known to defendants until much later.
On March 27, 1968, the adjuster for the defendant insurer telephoned Dr. Holcomb’s office and was advised by some unknown person there that the plaintiff had returned to work. Without talking to the doctor or securing from him a report as to plaintiff’s condition, and without attempting to determine what kind of work plaintiff was doing, if any, the defendant insurer terminated workmen’s compensation payments as of March 31, 1968.
On April 28, 1968, plaintiff did actually go to work as a pipefitter for another employer, Industrial Construction Company. He continued with them through July 17, 1969, except for a lapse during the period September 8, 1968 through October 20, 1968. Plaintiff testified that during the period of about 55 weeks which he worked, he was in the shop part of the time where he did not have to do any heavy lifting or climbing. For about four months of this employment, he was acting as a foreman and had to do some lifting and climbing. But, plaintiff insists that he was in persistent and continuous pain in his left groin and testicle. He says that on many occasions he had to leave work early because of the pain. Finally, on July 17, 1969, he stopped work due to the pain and has not returned.
*924 On January 3, 1969, plaintiff’s attorney wrote a letter to the defendant, The Lum-mus Company, demanding the resumption of compensation payments.
Defendant’s adjuster testified that on receipt of the letter of demand in their Lake Charles office, they requested plaintiff’s file be returned from the insurer’s home office in Hartford, Connecticut. The file did not reach the adjuster in Lake Charles until the first week in March of 1969. . He says he then asked plaintiff’s attorney to furnish whatever medical reports he had. As a result of this request, the adjuster received on March 18, 1969, a copy of a report which had been rendered by Dr. Holcomb on December 12, 1968, stating that because of plaintiff’s long history of recurrent herniae and the atrophied left testicle, plaintiff should not attempt any employment requiring heavy lifting or strenuous labor.
At the request of the defendant insurer, plaintiff was examined by Dr. Robert C. Looney, a general practitioner, on March 25, 1969. The present suit was filed on March 28, 1969. The adjuster says he did not receive Dr. Looney’s report until after the suit was filed. In any event, Dr. Looney’s report states that plaintiff is disabled due to the multiple herniae and the pain from the atrophied testicle. He expressed the opinion that as far as the hernia is concerned, plaintiff is in as good condition now as he was before the last hernia but he conceded that each hernia and surgical repair causes the condition to worsen. Dr. Looney also conceded that plaintiff could have substantial pain from the atrophied testicle on strenuous exertion.
Also on the request of defendant insurer, plaintiff was examined on January 6, 1970 by Dr. Leonard K. Knapp. This physician was called as a witness by the plaintiff and expressed the opinion that the pain in the left groin and testicle disables plaintiff from performing heavy manual labor. He also said that this pain may subside in time.
From the above review of the facts, it is apparent that plaintiff is presently totally and permanently disabled from performing the heavy manual labor of a pipe-fitter in which he was engaged at the time of the accident. All of the doctors testified to this effect. This disability is caused both by the recurrent herniae and the pain from the atrophied testicle. We have no difficulty in concluding that plaintiff is permanently and totally disabled.
Also, it is_ clear that plaintiff’s disability is causally related to the accident. The essence of the expert medical testimony is that each of the eight hernias contributed to the present weakened condition. Furthermore, the atrophied testicle is a direct result of surgery performed in the repair of the eighth hernia.
We also agree with the trial judge that the defendant insurer was arbitrary and capricious in failing to pay workmen’s compensation. After paying compensation for 12 weeks, payments were terminated on March 31, 1968. The adjuster conceded that the only basis for this action was his telephone call to Dr. Holcomb’s office where a nurse or some other unknown employee advised him that plaintiff had returned to work. The adjuster concedes he did not know whether plaintiff had actually returned to work nor did he know what kind of work. He did not receive a report from Dr. Holcomb that plaintiff had been released for heavy manual labor. Dr. Holcomb testified that if he had been asked, he would have certainly have said that the plaintiff was not able to return to work.
Furthermore, after the defendant insurer received plaintiff’s letter of demand on January 3, 1969, it took them eight weeks to have the file returned to Lake Charles. Then on March 18, 1969, the adjuster received a copy of Dr. Holcomb’s report of December 12, 1968, stating clearly that the plaintiff was disabled. This suit was filed March 28, 1969, which was 84 days after plaintiff’s letter of demand.
The defendant insurer cannot use Dr. Looney’s report as justification for failure *925 to pay. The adjuster did not even receive Dr. Looney’s report until after the suit was filed and then the report said plaintiff is disabled. Furthermore, defendant cannot urge the 55 weeks of work as a defense since they did not know this until after suit. The adjuster did not receive the report from Hub City Detective Agency until May 14, 1969 that plaintiff had worked as a pipefitter. There was simply no justification for defendant’s failure to resume payments within 60 days of the letter of demand on January 3, 1969. See LSA-R.S. 22:658.
The district judge awarded plaintiff $1500 for attorney’s fees. Plaintiff has answered the appeal and requested an increase in this award to the sum of $3500. The amount of attorney’s fees is based on the attorney’s time, skill and effort and rests largely within the discretion of the district judge. Cannizzaro v. Great American Insurance Company, La.App., 223 So. 2d 704. We find no manifest error in this award.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.