11YELVERTON, Judge.
This appeal is from a judgment rendered in 1995 dismissing an action by Scott Gegen-heimer, the former attorney of Karl J. Sylvester, for his attorney’s fees in a workers’ compensation case. The suit was brought against four defendants: Karl J. Sylvester; his new attorney, Floyd Dupre, Jr.; Cajun Painting, Inc., the employer; and the employer and insurer’s attorney, James C. Lopez. Alternatively, Gegenheimer’s action sought the nullity of a 1992 workers’ compensation settlement | ajudgment which deprived him of his attorney’s fee privilege. That 1992 settlement judgment, between Sylvester and Cajun, refused to enforce Gegenheimer’s recorded and approved privilege for attorney’s fees. We reverse the 1995 judgment and remand for further proceedings.
FACTS
The history of events is not disputed. The facts were stipulated in a colloquy that took place between the hearing officer and all parties at the trial conducted in 1995 in Lake Charles. We will now explain the events leading up to the 1992 workers’ compensation settlement judgment (herein the 1992 judgment) and the 1995 judgment dismissing Ge-genheimer’s action (herein the 1995 judgment).
In June 1991, Sylvester lived in Baton Rouge and worked there for Cajun Painting, Inc. (herein Cajun). Sylvester was injured on the job, and he hired Scott T. Gegenheimer, an attorney, to represent him. They *459 signed an employment contract in July 1991. The contract contained a “no settlement without consent” stipulation. Sometime in September 1991 Gegenheimer filed a 1008 claim form for Sylvester in the Baton Rouge office, District 5, of the Office of Workers’ Compensation (herein OWC). Shortly after the claim was filed, the employer’s insurer began paying weekly indemnity benefits. On October 7, 1991, not long after weekly benefits began, Sylvester discharged Gegenheimer. Gegenheimer recorded his employment contract in East Baton Rouge Parish. Then, he obtained an order, dated December 6, 1991, from a hearing officer where the claim was filed, approving an attorney’s fee of $901. The order stated that the fee was approved “in accordance with La.R.S. 23:1141.” Although the order did not fix the manner in which the ^approved fee was to be paid because the payments had just begun, the order made Gegenheimer’s claim an enforceable one with a privilege upon the compensation payable or awarded in accordance with La.R.S. 28:1141.
The weekly benefits that were paid to Sylvester started sometime in September 1991 (the record does not say exactly) and ended on March 26, 1992, when the workers’ compensation insurer terminated payments. On April 2, 1992, the employer filed a disputed claim asserting that it was justified in terminating benefits because it never owed benefits in the first place. This filing was assigned by the OWC to District 3 in Lake Charles. In May 1992 Sylvester filed a responsive disputed claim which was likewise assigned to District 3 in Lake Charles. Sylvester’s claim was essentially a refiling of his original claim, reasserting the basic issue of whether benefits were owed. The two claims were consolidated and set for trial on November 12, 1992. In the meantime, Sylvester had moved to Ville Platte in Evangeline Parish and had hired and fired at least one more attorney. At the last minute before trial, he hired Floyd Dupre, a young lawyer just beginning practice, to represent him at the District 3 trial. The matter was heard on November 12, 1992, by Administrative Hearing Officer Mark Zimmerman. According to the judgment, present were Dupre, who was the attorney for the claimant, and James Lopez, who was the attorney for defendants. As a result of an agreement reached by the persons present on November 12, a judgment was prepared and later signed on November 19, 1992. The judgment read, in part, as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in the total sum of ONE THOUSAND AND NO/ 100 ($1,000.00) DOLLARS rendered herein in favor of the plaintiff, Karl Sylvester, and against the defendants, CAJUN PAINTING, INC. and LOUISIANA EMPLOYERS SAFETY ASSOCIATION, |4EIGHT HUNDRED AND NO/100 ($800.00) Dollars representing future medical benefits and TWO HUNDRED AND NO/100 ($200.00) Dollars representing the attorney fees of Floyd A. Dupre, Jr.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the sums mentioned herein be paid to the plaintiff and to the attorney, Floyd A. Dupre, Jr., exclusive free and clear of any hen' or encumbrance in favor of Scott T. Gegen-heimer, the attorney previously representing the plaintiff. The order dated December 6, 1991, approving Mr. Gegenheimer’s fees for legal services are [sic] in reference to the weekly compensation paid to claimant up to the date of the said order, only.
It is specifically found by the hearing officer in this matter that the attorney’s fees previously awarded to attorney, Scott T. Gegenheimer, shall not be paid from nor considered subject to any privilege in connection with the amounts awarded herein and that these amounts shall be paid free and clear of any such hen and that payment of the sums awarded hereunder to the plaintiff and to attorney, Floyd A. Dupre, Jr., by the defendants shah fulfill any and ah responsibility of the defendants in this matter.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the cost of this matter be paid by the defendants and that following the payment of the sums hereunder that this matter is dismissed with full prejudice to any rights of the plaintiff.
*460 Gegenheimer was not made a party to the 1992 proceedings in District 3 before Hearing Officer Mark Zimmerman. He was not notified about the proceedings and did not participate. It was not until May 1993 that Gegenheimer received a copy of the 1992 judgment. The 1992 judgment itself bespeaks the fact that everyone involved knew about Gegenheimer’s claim for attorney’s fees and the fact that the claim had been approved by a workers’ compensation hearing officer in Baton Rouge. No notice of judgment was sent to Gegenheimer, and the judgment became final.
| gThis is the judgment Gegenheimer attacks. Although the 1992 judgment reads like a judgment following a trial on the merits, it was in fact a judgment approving a settlement between the parties present. In the present suit and appeal, Gegenheimer wants a judgment for his attorney’s fees against the parties to the 1992 settlement. In the alternative, he wants to nullify the settlement and the judgment and start over.
The hearing officer gave reasons for denying the action of nullity. She did not give any reasons for denying the direct claim for his attorney’s fees asserted by Ge-genheimer against the parties to the settlement judgment. She seemed concerned about Gegenheimer’s unconstitutional deprivation of a legal right but felt it was beyond her jurisdiction to consider it.
OPINION
We begin with the observation that it was not by accident or oversight that Gegenheimer was left out of the settlement and his privilege destroyed. Everyone was aware of his privilege. Everyone knew he was not present. They also knew he had not been notified. In other words, everyone knew that Gegenheimer was left out of the proceedings. Probably the reason he was left out was because there was not enough settlement money to go around. Cajun’s brief refers to the compromise as a “nuisance value” settlement. Whatever the reason, the case was settled out from under Gegenheimer’s privilege. Whoever drafted the judgment went to great pains to make sure of that.
Not only was it deliberate, it was also unjust to manipulate Gegenheimer’s privilege out of existence without notice to him and without anjjjopportunity to be heard. Ge-genheimer had a legal right to a fee, and he possessed a statutory privilege to enable him to enforce it upon any compensation payable or awarded in the case. The settlement judgment did not deprive him of the right to collect a fee from his former client, but it did away with his privilege to enforce the right.
The statute specifically provides that attorneys providing legal services under the statute have a privilege for their fee upon the compensation payable or awarded. La.R.S. 23:1141(A). By having his claim reviewed and approved by the hearing officer, the claim became enforceable; the approval conferred a privilege up to $901 upon “the compensation payable or awarded.” It was subject to the statutory limitation, in this case 20%, provided by La.R.S. 23:1141(B). Otherwise, all that was left to be determined was the manner in which the fee was payable. He was deprived of his privilege, or the means of enforcing his fee, by the 1992 judgment.
It was a ruse, clever but transparent, to relegate the $1000 part of the settlement to “future medical benefits” and thereby avoid calling it “compensation payable or awarded.” It is not necessary for us to decide in this case whether medical benefits are “compensation” for the purpose of determining attorney’s fees under La.R.S. 23:1141, because part of the actual, though unstated, consideration for the settlement in the present case included the weekly indemnity benefits paid earlier as a result of Gegenheimer’s efforts. Because one issue raised by Cajun’s contested claim was whether Sylvester was ever entitled to any benefits at all, that issue was settled and absorbed in the compromise when Sylvester was allowed to keep all benefits he had previously received. Gegenheimer’s privilege surely applied to those benefits.
|7Gegenheimer has suffered the loss of a clear legal right without notice and without an opportunity to be heard. He has appealed. It is the duty of this court on appeal to render any judgment which is just, legal, and *461 proper upon the record. La.Code Civ.P. art. 2164. He asks that we declare the settlement judgment either an entire or a partial nullity. His right to seek nullity under La. Code Civ.P. art.2004 would be supported by such cases as Kem Search Inc. v. Sheffield, 434 So.2d 1067 (La.1988), the judgment herein being “unconscionable” and “inequitable.” Certainly, the 1992 judgment was a violation of Gegenheimer’s due process rights under the Fourteenth Amendment of the United States Constitution and Article I, § 2 of the Louisiana Constitution. We have studied this suggested remedy carefully, but we find that nullity, whole or partial, cannot restore his right without running afoul of other provisions of the law. We will explain.
La.R.S. 23:1272(B) provides that the judgment approving a workers’ compensation settlement “shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party.” (Emphasis added). La.R.S. 23:1271(B) defines “parties” to mean the employee or his dependent and the employer or his insurer. Only a party to the settlement can raise nullity under La.R.S. 23:1272. Hence, Gegenheimer as an outsider cannot raise nullity under this workers’ compensation provision. A judgment meeting the procedural requirements of La.R.S. 23:1272 is “virtually unassailable.” Smith v. Cajun Insulation, Inc., 392 So.2d 398, 401 (La.1980). An employee who alleges noncompliance with those requirements states a cause of action for nullity because of ill practices, under La.Code Civ.P. art.2004. Id. An employee or employer seeking nullity of a compromise for any other reason is confined to proof of fraud or misrepresentation made by the other party. In [8the present case, the 1992 settlement agreement does not appear to have met the procedural mandates of La.R.S. 23:1272. But, none of the parties dispute that the 1992 judgment was based on a proper settlement. None of the parties have attacked the compromise settlement. Gegenheimer cannot. Hence, the nullity action based on ill practices is unavailable to Gegenheimer.
Gegenheimer is also prohibited from seeking the nullity of the settlement by the jurisprudence based on by La.R.S. 37:218(A), governing his attorney’s privilege. This provision reads:
By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit_ In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client’s domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made. (Emphasis added).
In a series of cases, the Louisiana Supreme Court refused to apply this statute literally. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978); Calk v. Highland Const. & Mfg., 376 So.2d 495 (La.1979); and Scott v. Kemper Insurance Company, 377 So.2d 66 (La.1979). The court instead interpreted the statute in such a way so as not to conflict with two rules derived from what was then the Code of Professional Responsibility: (1) the Ghent’s absolute right to discharge his attorney with or without cause, and (2) the prohibition against an attorney acquiring an ownership interest in a client’s claim before the attorney has rendered all the legal _[gserviees. Thus, the court held that the statute created only a privilege in favor of the dismissed attorney, not an ownership right to future proceeds, and that the dismissed attorney could not nullify his former chent’s settlement or control the htigation in any manner. Id.
Gegenheimer cannot set aside the 1992 settlement judgment and nullify his former chent’s compromise because this would be in contravention of the controlling jurisprudence. The workers’ compensation claim *462 that he filed for Sylvester in 1991 is now over. There is a final judgment. Its effect was to take away his privilege for his approved attorney’s fee. Gegenheimer can do nothing legally to regain his privilege. It is gone.
Because he has no other remedy at law and because he can fulfill the other four requirements for an unjust enrichment claim, as we will hereafter explain, we find that Gegenheimer has stated a cause of action against Cajun. To proceed under the theory of unjust enrichment, a plaintiff must prove five elements: (1) defendant’s enrichment; (2) plaintiffs impoverishment;' (3) a causal relationship between the enrichment and resulting impoverishment; (4) an absence of justification or legal cause for the enrichment and impoverishment; (5) no other remedy at law, i.e., the action is subsidiary or corrective in nature. La.Civ.Code art. 2298; Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). Under this action in quasi-contract, Gegenheimer overcomes the fact that no privity of contract exists between himself and Cajun.
Based on the circumstances of this case, we conclude that Gegenheimer’s claim meets all five requirements, or elements, of the unjust enrichment action. There was an enrichment as well as an impoverishment. Cajun | xpbenefitted by the negation of the privilege; the privilege was no longer a $901 factor encumbering the settlement. Gegen-heimer was impoverished by the loss of his privilege. Because Cajun gained a dismissal free of Gegenheimer’s privilege, Cajun’s gain in the settlement was correlative to Gegen-heimer’s loss. Hence, there was a causal relationship, the third requirement for unjust enrichment, between the enrichment and the impoverishment. The fourth requirement of unjust enrichment is satisfied because no justification or legal cause existed. Gegenheimer’s fee could not be disregarded on the pretext of saying the settlement was for only $1000. The parties accomplished a complete settlement putting an end to the entire dispute, and there was a final judgment dismissing all claims with prejudice. Thus, the consideration necessarily included all sums paid earlier, just as it necessarily included Cajun’s dismissal of its own claim to recover those sums. Therefore, taking into account the earlier weekly indemnity payments which Gegenheimer’s efforts had procured for Sylvester (as recognized by the order of the first hearing officer), Cajun was not justified in failing to take into account Gegenheimer’s fees when the settlement was made. We have already explained that Gegenheimer has no other remedy at law. The action for unjust enrichment lies against Cajun and its insurer.
Our application of the principles of unjust enrichment in this case is consistent with the ease of Transportation Insurance Co. v. Leavines, 94-651 (La.App. 5 Cir. 5/10/95), 656 So.2d 720, writ denied, 95-1468 (La.9/15/95), 660 So.2d 455, in which a workers’ compensation medical expenses carrier with a concededly valid claim intervened, but the judgment inadvertently failed to include the claim. The judgment became final. The insurance company was allowed to assert its claim under the principle of unjust enrichment.
InOn the other hand, the action does not lie against Dupre, who was Sylvester’s 1992 settlement attorney. Dupre’s attorney’s fee of $200 was recognized and ordered paid in the 1992 judgment. He was not enriched, nor was Gegenheimer impoverished, by the payment of that fee. In this case the total settlement falls well within the amount to which the 20% limitation on attorney’s fees applies under La.R.S. 23:1141(B). Dupre’s fee was assessed at 20% on the $1000 portion of the settlement to which he expended his efforts. He was entitled to that fee and was not enriched when he got it. Gegenheimer’s fee can be assessed at no more than 20% on that portion to which he expended his efforts. That portion was the total weekly indemnity paid between September 1991 and April 1992, which will be determined on remand. Furthermore, when the hearing officer considers this ease on remand, the language in the 1992 judgment that purports to limit Gegenheimer’s fee to the amount earned at the time of his discharge shall be disregarded. This could not possibly have been part of the settlement, and the hearing officer who signed the settlement judgment in 1992 *463 had no power to modify the substance of another hearing officer’s order rendered in 1991. [See Wills v. Solida Const. Co., 543 So.2d 1365 (La.App. 2 Cir.1989), for a discussion of the allocation of attorney fees between competing claimants.]
Gegenheimer’s entitlement to his attorney’s fee from Sylvester, as recognized and approved by the OWC order of 1991, springs from their employment contract and was unaffected by the settlement judgment. The present suit for Gegenheimer’s fee names Sylvester as a defendant and his fee has already been approved.
h2We do not know the amount of weekly indemnity benefits paid by Cajun before it discontinued payment in 1992. The matter is remanded to the hearing officer for a hearing to determine the amount of those benefits. The hearing officer will hereafter render judgment in favor of Gegenheimer and against Sylvester and Cajun in the amount of Gegenheimer’s already approved fee, subject, of course, to the 20% limitation on the amount of the weekly indemnity benefits paid as provided by La.R.S. 23:1141(B). The liability of Sylvester and Cajun will be solidary. Martin v. David, 95-1411 (La.App. 3 Cir. 7/31/96), 685 So.2d 158.
This ease is consolidated with Sylvester v. Cajun Painting, 96-451 (La.App. 3 Cir. 10/9/96), 689 So.2d 463, which utilized motion procedure to present the same issues, and which was dismissed at the trial level on procedural grounds. In view of our decision today, it is moot. We will render a separate judgment declaring it moot.
For the foregoing reasons, the judgment of the OWC is reversed, and the matter is remanded for further proceedings. All costs will be paid by Cajun Painting, Inc., and its insurer.
REVERSED AND REMANDED.